UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MED-CARE DIABETIC &
MEDICAL SUPPLIES, INC.,**

      **Plaintiff,**

-v-                                                 Case No.: 2:14-cv-082
                                                                             JUDGE SMITH
                                                                             Magistrate Judge Deavers

**STRATEGIC HEALTH ALLIANCE
II, INC. d/b/a ACCESSHEALTH,**

      **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff Med-Care Diabetic & Medical Supplies, Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 3). The motion is fully briefed and ripe for review. For the reasons that follow, Plaintiff's motion is **DENIED**.

**I.    BACKGROUND**

Plaintiff Med-Care Diabetic & Medical Supplies, Inc. ("Med-Care") is a national durable medical equipment supplier and pharmacy provider of medical equipment and supplies, and medications, serving approximately 300,000 patients nationwide. (Compl. ¶ 10; Declaration of Dr. Steven Silverman at ¶ 3 ("Silverman Decl.")). Med-Care is a Florida corporation, with its principal place of business in Boca Raton, Florida. (Compl. ¶ 8). Med-Care was selected by the Centers for Medicare and Medicaid Services as a Medicare Part B competitive bid winner for national mail order diabetic supplies, sleep apnea supplies and oxygen supplies. (Silverman Decl. at ¶ 5). Med-Care is a mail-order pharmacy. (Compl. ¶¶ 27-28). Med-Care's patients are individuals with serious and chronic illness, including many who are diabetic, often insulin

dependent, as well as people who are in need of respiratory and sleep apnea equipment and supplies. Med-Care helps patients manage their chronic conditions by providing cost-effective, high-quality products and services delivered directly to their homes. (Silverman Decl. at ¶ 6).

Defendant AccessHealth is a Pharmacy Services Administrative Organization ("PSAO"), which provides pharmacy members access to pharmacy networks in order to dispense medication to their customers' patients and beneficiaries. AccessHealth is a Delaware corporation with its principal place of business in New Albany, Ohio. AccessHealth enters into contracts with Pharmacy Benefit Managers ("PBMs") on behalf of its retail pharmacy members to obtain reimbursement to the pharmacies for certain drugs dispensed to patients enrolled in drug benefit plans administered by the PBMs. (Connor Decl. ¶ 7, attached as Exhibit 1 to Def.'s Response). The reimbursement rates provided by the PBMs are specific to drugs dispensed in the retail or community pharmacy setting; therefore, mail order pharmacies are not eligible to enroll as AccessHealth members. (Connor Decl. ¶¶ 6-7).

Med-Care entered into a Pharmacy Provider Participation Agreement with AccessHealth on June 27, 2011 (the "Participation Agreement") (Attached as Exhibit A to Def.'s Response)[1]. Med-Care completed a Pharmacy Participation Enrollment Form, which was signed by Med-Care's CEO, Dr. Steven Silverman. In the Enrollment Form, Med-Care represented that 100% of its business was "Community/Retail" and that no percentage of its business was mail order.

In late 2013, AccessHealth learned that Med-Care operates primarily as a mail-order pharmacy, despite representing on the Enrollment Form that it operates 100% as a community/retail pharmacy. (Connor Decl. ¶¶25-28). AccessHealth did not seek to terminate

---

[1] The Participation Agreement entered into between the parties in 2011 is attached to Defendant's Response as Exhibit A to Connor's Declaration, with a last revised date of May 23, 2011. The Participation Agreement currently in effect is attached as Exhibit A to Plaintiff's Complaint, with a last revised date of September 19, 2013.

the agreement with Med-Care immediately under Section 14.3 of the Participation Agreement, based on the "misrepresentation with respect to the representations and warranties set forth in Section 3.1." (2013 Participation Agreement § 14.3). Instead, in a letter dated December 20, 2013, AccessHealth notified Med-Care that it was terminating the Participation Agreement effective January 22, 2014, providing the thirty day notice of termination under Section 14.2. (Silverman Decl. at ¶ 13). Section 14.2 of the Participation Agreement specifically provides: "14.2 Termination by Notice. Either Party may terminate this Agreement, with or without cause by giving at least thirty (30) days prior written notice to the other Party." (Section 14.2 of the Participation Agreement).

Subsequent to the termination notice, Med-Care requested that AccessHealth provide it with a 90 day transition period to allow Med-Care to transition out of AccessHealth's networks to another PSAO in order to maintain continuity of care for Med-Care's patients. (Compl. ¶ 22). However, AccessHealth denied the request, asserting that continuation of the Participation Agreement would "put at risk AccessHealth's contractual relationships with PBMs on behalf of approximately 4,600 other pharmacy customers." (Def.'s Response at 5). Further, AccessHealth asserts that because its contracts with PBMs include reimbursement of pharmacies for prescription drug benefits funded by federal government programs, accurate representations regarding pharmacy participants is also a matter of compliance with federal fraud and abuse laws. (*Id.*).

Plaintiff initiated this case on January 22, 2014. (*See* Compl., Doc. 1). Plaintiff is seeking injunctive relief from this Court asserting that "the immediate termination without a reasonable transition period to permit Med-Care to transition to another PSAO would have a significant and deleterious impact on the patients served by Med-Care." (Silverman Decl. at

3

¶17). Plaintiff is requesting the Court prohibit AccessHealth from terminating its contractual obligations to Med-Care for a period not to exceed ninety (90) days to allow Med-Care to transition to another PSAO.[2]

## II.     STANDARD OF REVIEW

The Court must consider four factors in determining whether to issue a preliminary injunction and/or permanent injunction:

> (1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the relief requested; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest will be served by issuance of the injunction.

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004). These four factors are "to be balanced, not prerequisites that must be met." *Hamad v. Woodcrest Condominium Assoc.*, 328 F.3d 224, 230 (6th Cir. 2003); *see also Capobianco, D.C. v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004). Notwithstanding this balancing approach, the likelihood of success and irreparable harm factors predominate the preliminary injunction inquiry. Thus, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

The decision to issue a preliminary injunction lies within the sound discretion of the district court. *See Golden v. Kelsey-Hayes*, 73 F.3d 648, 653 (6th Cir. 1996). As noted by the Supreme Court and Sixth Circuit, "[t]he purpose of a preliminary injunction is merely to preserve the status quo until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Certified Restoration Dry Cleaning Network, L.L.C., v. Tenke Corp.*, 511

---

[2] Despite originally seeking a 90 day transition period, in the Reply, Plaintiff is now seeking until February 18, 2014 to transition to a new PSAO.

F.3d 535, 542 (6th Cir. 2007).  The issuance of a preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Co. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

**III.   DISCUSSION**

Plaintiff Med-Care initiated this case against Defendant AccessHealth asserting claims for breach of contract and breach of the duty of good faith and fair dealing.  The Court will consider Plaintiff's claims to determine whether Plaintiff has a likelihood of success on the claims; and whether a preliminary injunction should be entered in this case.  As a preliminary matter, the Court will apply the laws of the State of Ohio pursuant to the Participation Agreement between the parties.  (*See* Section 16.4 of the Participation Agreement).

**A.     Likelihood of Success on the Merits**

**1.     Breach of Contract**

Plaintiff Med-Care asserts that AccessHealth's purported termination is null and void because it violates various state law notice requirements and continuity of care mandates.  Plaintiff is not clear on how this argument constitutes a breach of contract claim.  Rather, Plaintiff is arguing that "[b]oth the time for notification of termination and AccessHealth's failure to notify patients of the termination of Med-Care from provider networks are breaches of applicable state laws, as well as contrary to the intent of those state laws concerning the continuity of care to patients."  (Pl.'s Mot. at 5).

Contrary to Plaintiff's assertions, the express terms of the Participation Agreement unambiguously provide for termination, with or without cause, by giving at least thirty days written notice.  (*See* Section 14.2).  AccessHealth therefore acted in accordance with the terms of

the Participation Agreement in providing thirty days written notice of the termination to Plaintiff.[3]

Plaintiff, Med-Care, purports to rely on Section 2.6 of the Participation Agreement in asserting a breach of contract claim.  Plaintiff asserts that it "has exercised its professional judgment in making its reasonable request that AccessHealth provide it with a 90 day grace period to allow Med-Care to transition out of AccessHealth's networks to another [PSAO]." (Compl. ¶ 38).  Section 2.6 specifically provides:  "Company agrees that it shall not interfere with the right of Provider to exercise professional judgment in the rendition of services, it being understood and agreed that the traditional relationship between the professional and patient will be maintained."  (Section 2.6 of the Participation Agreement).

Defendant AccessHealth argues, and the Court agrees, that the general prohibition on interference with professional judgment "cannot reasonably be construed to alter in any way the specific termination provisions that Med-Care agreed to in entering into the Participation Agreement."  (Def.'s Response at 9, citing *Toledo-Lucas Cnty. Port Auth. v. Axa Marine & Aviation Ins. (UK), Ltd.*, 368 F.3d 524, 520-31 (6th Cir. 2004) (Ohio law is clear that in the event two provisions of a contract are potentially inconsistent, the specific provision prevails over the more general).  The parties entered into the Participation Agreement with full knowledge of the termination provision.  Plaintiff's interpretation of the Participation Agreement would allow a party to avoid termination merely as a matter of professional judgment, making the termination provision a nullity.

---

[3] AccessHealth asserts that the Participation Agreement was subject to termination under Section 14.3 without any notice period due to Med-Care's misrepresentations, but it chose to provide thirty days notice to allow Med-Care to make the transition.

In addition, whether or not Med-Care continues to work with AccessHealth is not a matter of "professional judgment in the rendition of services," nor and interference in the relationship between patient and medical professional.  Thus, Section 2.6, by its terms, does not apply.  Accordingly, Plaintiff has failed to set forth a claim for breach of contract as AccessHealth has not interfered in any way with Plaintiff's exercise of professional judgment in its relationship with its pharmacy customers.  Defendant merely exercised its contractual right to terminate the Participation Agreement.

Plaintiff Med-Care also attempts to assert a breach of contract claim arguing that AccessHealth's termination of the Participation Agreement violates "continuity of care" provisions of the state laws of California, Florida, and Illinois.  (Pl.'s Mot. at 5-9).  Defendant argues, and the Court agrees, that the referenced state laws are not applicable to the parties or the terms of the Participation Agreement.  The specific state laws referenced by Plaintiff regulate health care plans, HMOs, and health insurance providers.  AccessHealth enters into contracts with PBMs for member pharmacies, essentially providing back-end administrative functions.  There is no evidence that it is a health care plan with patients and therefore subject to the state laws referenced by Plaintiff.

Moreover, despite Plaintiff's attempts to mislead the Court as to the nature of its business, Plaintiff is not a hospital or a physician group.  Plaintiff is a mail-order pharmacy.  It is no violation of state law for a pharmacy to have to seek reimbursement through different channels.  If Plaintiff is concerned for its customers and wants to ensure that they continue to receive medical products as ordered, it is free to continue providing them and worry about reimbursement later, or seek reimbursement through another source.

Additionally, in Med-Care's Reply, it references communications with AccessHealth that occurred after notice of the termination. Med-Care asserts that the termination notice was intended as a bargaining ploy intended to expand, rather than terminate, Med-Care's relationship with AccessHealth. (Pl.'s Reply at 3). Plaintiff further argues that "[a]t no time during these discussions did . . . AccessHealth suggest that the termination date was non-negotiable or that Med-Care would not be provided a reasonable period in which to transition to another PSAO." (*Id.*). Regardless of any attempts by the parties to enter into a new agreement, the thirty days written notice had already been given to Med-Care terminating the Participation Agreement. New negotiations between the parties does not somehow extend the terms of their previous agreement.

Accordingly, Plaintiff has failed to set forth a claim for breach of contract. Defendant AccessHealth terminated the Participation Agreement by giving thirty days written notice in accordance with the terms set forth in Section 14.2 of the Participation Agreement. Plaintiff has not identified any specific terms of the Participation Agreement that AccessHealth has violated. Accordingly, Plaintiff has failed to demonstrate any likelihood of success on the merits of its breach of contract claim.

### 2. Breach of Good Faith and Fair Dealing

As Defendant AccessHealth correctly asserts, under Ohio law, 'the breach of duty of good faith does not exist as a separate cause of action from a breach of contract claim.'" *Ireton v. JTD Realty Invs., L.L.C.*, 162 Ohio Misc. 2d 1, 22 (Clermont County Ct. Com. Pl. 2010); *see also Wauseon Plaza, Ltd. Partnership v. Wauseon Hardware Co.*, 156 Ohio App.3d 575 (Ohio Ct. App. 2004); *Holmes v. Wilson*, 2009 U.S. Dist. LEXIS 106826 at *3 (S.D. Ohio 2009) (Marbley, J.). In Ohio, "[e]very contract imposes upon each party a duty of good faith and fair

dealing in its performance and its enforcement." *Id*., citing *Krukrubo v. Fifth Third Bank*, 2007 Ohio 7001 (Franklin County Ct. Com. Pl. 2007). Since the duty of good faith and fair dealing is integral to any contract, the breach of that duty is thus integral to a cause of action for breach of contract. *Id*. Accordingly, a breach of the implied covenant of good faith and fair dealing "cannot stand along as a separate cause of action from a breach of contract claim." *Id*.

Additionally, the implied duty of good faith and fair dealing cannot alter the terms of the express contract. "The agreement of parties to a written contract is to be ascertained from the language of the instrument itself, and there can be no implication inconsistent with the express terms thereof." *Latina v. Woodpath Dev. Co.*, 57 Ohio St. 3d 212, 214 (1991); *see also Pannozzo v. Anthem Blue Cross & Blue Shield*, 152 Ohio App. 3d 235, 240 (Ohio App. Ct. 2003) ("[W]here the terms of a written contract are clear and unambiguous, courts shall not imply that other terms exist."). Plaintiff cannot maintain an action for breach of the implied covenant of good faith and fair dealing and therefore cannot establish a likelihood of success on the merits on such a claim.

### B. Irreparable Harm

After examining a plaintiff's likelihood of success on the merits of their claims, a court must balance those conclusions and findings with other factors, including the possibility that denial of a preliminary injunction will cause irreparable harm to the plaintiff.

Plaintiff Med-Care argues that it, along with its patients, will suffer irreparable harm if not given a reasonable transition period. Specifically, Plaintiff states that its ability to work with physicians will be harmed; it will lose the ability to serve patients whose benefits are processed through AccessHealth membership; it will lose $200,000 a day; and will suffer loss of reputation and goodwill developed by Med-Care with physicians throughout the country. (Pl.'s Mot. at 11).

9

Defendant AccessHealth, however, argues that Plaintiff's alleged harm is not irreparable because it results from operation of the express terms of the Participation Agreement; and any alleged harm is purely economic and therefore not irreparable.

As discussed above, both parties entered into the Participation Agreement that allowed for termination by either party with thirty days written notice.  Plaintiff is alleging that it will suffer irreparable harm unless it has until February 18, 2014 to make the transition to another PSAO, essentially asserting that thirty days is not sufficient to make the transition.  Plaintiff's alleged harm, however, is the result of AccessHealth exercising its rights under the express terms of the Participation Agreement.  Med-Care thus had thirty days to make the transition to another PSAO—which is exactly what it bargained for.  Kevin Connor, General Manager of Strategic Health Alliance II opines that "30 days is sufficient time for a pharmacy, such as Med-Care, to find another PSOA [sic] contract or enter into direct contracts with PBMs to replace the PSAO contract it had through AccessHealth.  Thus, if Med-Care had been diligent, it would already have entered into contracts to replace the one it had with AccessHealth."  (Connor Decl. ¶ 34). Plaintiff counters that the termination was sent immediately before the Christmas and New Year's holidays, and as a result it was unable to engage a new PSAO in substantive discussions until January 6, 2014.  (Silverman Decl. ¶ 8).  Regardless of the timing, there is no dispute that Plaintiff's alleged harm results from the express terms of the contract.  It does not constitute irreparable harm.  *See Salt Lake Tribune Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003) ("We will not consider a self-inflicted harm to be irreparable.").

Further, any alleged harm is purely economic and therefore is not irreparable harm. Termination of the Participation Agreement by AccessHealth does not preclude Med-Care from continuing to supply prescription drugs to its customers.  There may be uncertainty about its

10

reimbursement for the prescription drugs, as it transitions to a new PSAO, but that is a purely economic issue. Med-Care can avoid any potential harm to its reputation and the goodwill it has with its customers and physicians by continuing to deliver the prescription drugs. And, if Med-Care is somehow unable to do this, then it may simply notify the customers and they can obtain their prescriptions from any number of other pharmacies.

### C. Harm to Others

In considering this factor, the Court must "(1) balance the harm Plaintiff would suffer if its request for a preliminary injunction were denied against the harm Defendant would suffer if an injunction were to issue, and (2) assess the impact the preliminary injunction might have on relevant third parties." *Procter &Gamble Co. v. Georgia-Pac. Consumer Prods. LP*, 2009 U.S. Dist. LEXIS 72052 (S.D. Ohio 2009) (Frost, J.). As set forth above, Plaintiff has failed to establish that it will suffer irreparable harm if an injunction is not entered in this case. However, Defendant AccessHealth has established the harm it will suffer by continuing to contract with Med-Care. Med-Care is a mail-order pharmacy and not a permissible member. AccessHealth has represented to the PBMs that its members are community-based, retail pharmacies, not mail-order pharmacies. Additionally, because AccessHealth's contracts with PBMs include reimbursement to pharmacies for prescription drug benefits funded by federal government programs, accurate representations regarding pharmacy participants are also a matter of compliance with federal fraud and abuse laws. Accordingly, the harm to others factor weighs in favor of denying a preliminary injunction in this case.

### D. Public interest

This case involves a contract between two sophisticated companies. While Plaintiff argues that its customers will be impacted, there is no evidence that these customers cannot

11

receive their prescriptions.  Plaintiff can continue to provide the prescriptions, or merely notify their customers that they will need to obtain their prescriptions elsewhere.  As discussed above, this may have an economic impact on Plaintiff's business, but there is no evidence of any harm to the general public.  Moreover, enforcement of the express terms of the Participation Agreement is consistent with the "general public interest in the enforcement of voluntarily assumed contract obligations."  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007).

In summary, the Court finds that Plaintiff has failed to demonstrate a potential likelihood of success on the merits of its claims.  Further, the other factors do not strongly favor Plaintiff.  Accordingly, after examining the four preliminary injunction factors together, the Court concludes that the issuance of a temporary restraining order and/or preliminary injunction is not warranted in this instance.

**IV.    CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.  By previous Order of this Court, the parties agreed to extend the terms of the Participation Agreement until a decision was issued, but not later than January 31, 2014.  This issuance of this Opinion and Order dissolves that agreement.

The Clerk shall remove Document 3 from the Court's pending motions list.

**IT IS SO ORDERED.**

*s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**